Filed 11/29/22 P. v. Harmon CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C095525 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE012534) |
| v. | |
| HARLAND HARMON, JR., | |
| Defendant and Appellant. | |

A jury found defendant Harland Harmon, Jr., guilty of assault with a deadly weapon, vandalism upon a vehicle, and resisting an officer.  The trial court sentenced him to an aggregate term of three years eight months in state prison, including the midterm of three years for the assault conviction.  On appeal, defendant contends the trial court failed to understand its "newfound obligation" to consider the low term as presumptive "when faced with credible evidence of a nexus between a defendant's psychological trauma and the commission of the charged offenses."  We find the trial court properly exercised its discretion and affirm the judgment.

1

BACKGROUND

On August 8, 2020, defendant's wife, K.H., went to her and defendant's house to remove her possessions. K.H. had been living at her mother's house along with her stepson and her brother. Defendant had agreed that K.H. could come that morning to move her belongings while he was at a class. K.H. had arranged for defendant's son (her stepson) J.O., her nephew A.G., and her brother R.H. to help with the move. Defendant had agreed to stay away while they were at the house. Defendant came home, however, and a dispute arose, which ended in violence, property damage, and a standoff with sheriff's deputies.

In August 2021, defendant was charged with three counts of assault with a deadly weapon, three counts of assault with force likely to produce great bodily injury, vandalism upon a vehicle, and felony resisting an officer. He pleaded not guilty and the matter proceeded to a jury trial.

Following the presentation of evidence, the People moved to dismiss the charges of assault with force likely to produce great bodily injury for lack of evidence; the trial court granted the motion. The jury subsequently found defendant guilty of a single count of assault with a deadly weapon, vandalism upon a vehicle, and felony resisting an officer. The remaining charges were dismissed after the jury failed to reach unanimous verdicts on each of them.

On December 30, 2021, before sentencing, defendant submitted to the trial court a statement of mitigation. Included in that statement was a discussion of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731) (Senate Bill 567) and its amendments to Penal Code section 1170.[1] Defendant explained the amendments eliminated the midterm as the presumptive term and said that "unless the court finds that the aggravating

---

[1] Undesignated statutory references are to the Penal Code.

circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice," courts are now required to impose the low term if, among other things, defendant "has experienced psychological, physical, or childhood trauma, including but not limited to abuse, neglect, exploitation, or sexual violence."

Defendant argued he "experienced psychological, physical, or childhood trauma, including but not limited to, abuse, and neglect, which contributed to his conduct in this case."

Defendant was sentenced on January 7, 2022. At sentencing, the court heard victim impact statements from J.O. and J.Or., the mother of five of defendant's children. Defendant then made a statement to the trial court that included a description of his struggles within the family law court system, the devastating impact of COVID-19 on his business, as well as his depression and anxiety. Defendant talked about his learning disabilities and lifelong "mental health disorders." He described having a "massive panic attack" on the day he committed his crimes; he "thought everybody was against [him], taking everything away from [him]." Defendant told the court, "I wanted the Sheriffs to kill me that day."

Defendant's counsel then asked defendant, "Can you let the Court know if you experienced any childhood trauma and how that affected your actions in this incident." Defendant recalled being taken to Mexico as a young child to "grow marijuana and be rebels.

"I remember a sky tower my dad built to shoot at the rangers.

"My dad was stabbed, and my mom was covered with blood, and I remember looking up at her, terrified that she was hurt, and she was covered with blood.

"I was tossed around when my dad was running from the police.

"I hit my cheek on a wheel well of a Blazer, and it cut the muscle inside and caused major brain damage.

"My parents told me that I ate a handful of hashish when I was that age.

"I was—when we came back from New Mexico [*sic*], I was beat with coat hangers. I was picked up and strangled by my neck. I was stomped on, and in many occasions with the police—me calling the police for my dad abusing me."

Defendant's counsel then asked the trial court to consider bail pending appeal, reduce defendant's felony conviction to a misdemeanor, and grant probation; the court denied the requests. The court sentenced defendant to an aggregate term of three years eight months in state prison, including the midterm of three years for assault with a deadly weapon (the People sought the upper term). The court explained the basis for the sentence: "[F]or circumstances in aggravation, this was a crime of great violence. There [were] threats of great bodily harm. There has been a pattern of increasing seriousness in [defendant's] criminal history. I have certainly seen a lot worse, but this is still concerning. [Defendant was] on formal probation when the crimes were committed, and obviously [defendant's] performance on probation was not satisfactory. [¶] I do not find mitigating circumstances."

Defendant timely appealed his sentence.

## DISCUSSION

Defendant contends the trial court "failed to properly consider [his] psychological and childhood trauma as the basis of a presumptive low term" following the amendments to section 1170, subdivision (b)(6). Specifically, he argues the trial court was "not aware of its newfound obligation to consider the low term to be the presumptive term when faced with credible evidence of a nexus between a defendant's psychological trauma and the commission of the charged offense." We disagree.

The Governor signed Senate Bill 567 and Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 695) (Assembly Bill 124) on October 8, 2021, amending section 1170, subdivision (b)(6). These bills became effective January 1, 2022. (Cal. Const., art. IV, § 8, subd. (c); Stats. 2021, ch. 695, § 5.3) [Assembly Bill 124]; Stats. 2021, ch. 731,

4

§§ 1.3, 3(c) [Senate Bill 567].)[2]  Defendant was sentenced on January 7, 2022, six days after the amendments to section 1170, subdivision (b)(6) took effect.

As stated, before the sentencing hearing, defendant submitted to the trial court a statement in mitigation describing to the court the amendments to section 1170, subdivision (b)(6), which provide that "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: the person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence."

Relative to those amendments, defendant asserted that he suffered childhood trauma, and that trauma impacted his conduct on the day of his offenses.  He made the same claim at the sentencing hearing, during which he gave a lengthy and detailed account of his childhood traumas and the impact they had on him as an adult, including their impact on his criminal conduct.  Indeed, defendant's attorney specifically asked defendant to address the nexus between his childhood trauma and the criminal conduct underlying his convictions.

In short, defense counsel went to great lengths to make the trial court aware of the recent changes to section 1170, subdivision (b)(6), detail defendant's history of childhood trauma, and argue the trauma had a direct impact on his criminal conduct. Evidently, the trial court was not persuaded.  The court was not required to mention section 1170, subdivision (b)(6) in assessing the aggravating and mitigating factors because, "[i]n the

---

**2**     Because Senate Bill 567 was the last bill signed by the Governor and bears the higher chapter number, its amendments prevail over those specified in Assembly Bill 124.  (Gov. Code, §§ 9510, 9605, subd. (b); *In re Thierry S.* (1977) 19 Cal.3d 727, 738-739.)

5

absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.' " (*People v. Thomas* (2011) 52 Cal.4th 336, 361; see Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].) Defendant has not overcome that presumption.

## DISPOSITION

The judgment is affirmed.

      KRAUSE     , J.

We concur:

      DUARTE     , Acting P. J.

      EARL     , J.